## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

BUNTHOEUN CHEA,

              Petitioner,

v.

BRIAN H. GILLEN, Superintendent of the
Plymouth MA County Jail,
PATRICIA HYDE, Acting Field Office
Director, Immigration and Customs
Enforcement, Enforcement and Removal
Operations, Burlington Massachusetts,

              Respondents.

Civil Action No. 1:25-CV-11169-LTS

## RESPONDENT'S MEMORANDUM IN OPPOSITION TO PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C § 2241

Respondents,[1] by and through their attorney, Leah B. Foley, United States Attorney for the

District of Massachusetts, respectfully submit this opposition to the Petitioner's Petition for Writ

of Habeas Corpus filed by the Petitioner pursuant to 28 U.S.C. §2241 ("Petition").  Respondents

respond to the Petition as contemplated by Rules 4 and 5 of the Rules Governing Section 2254

Cases in the United States District Courts.[2]

---

[1] Since Petitioner is now detained, the Petitioner's immediate custodian, Antone Moniz, Superintendent of Plymouth County Correctional Facility, should be substituted as the only named Respondent.  *See Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004): *Vasquez v. Reno,* 233 F.3d 688, 695 (1st Cir. 2000).   Patricia Hyde should be dismissed as a Respondent, as the Court lacks jurisdiction over supervisory officials.  *See Vasquez*, 233 F.3d at 696 (explaining that supervisory officials are not proper respondents to habeas actions, holding that "as a general rule, the Attorney General is neither the custodian of such an alien in the requisite sense nor the proper respondent to a habeas petition.").

[2] *See* Rule 1(b) ("The district court may apply any or all of these rules to a habeas corpus

## INTRODUCTION

Petitioner's detention by U.S. Immigration and Customs Enforcement ("ICE") for purpose of effectuating his final order of removal is fully supported by the Immigration and Nationality Act ("INA"), its implementing regulations, and the Constitution.  Additionally, this Court lacks jurisdiction to interfere with ICE's removal of Petitioner to his home country per 8 U.S.C. § 1252(g) which bars district court review of any "decision or action by [ICE] to … execute removal orders."  *Compere v. Riordan,* 368 F. Supp. 3d 164, 171 (D. Mass. 2019) (Explaining that because petitioner is "subject to a final order of removal and he seeks to enjoin ICE from enforcing that order … [h]is claim for injunctive relief falls, therefore, directly within the jurisdictional bar set by Congress.").

Petitioner is subject to a final order of removal and is detained pursuant to 8 U.S.C. § 1231(a).  *See* Declaration of Assistant Field Office Director, Keith Chan ¶ ¶10, 12, ("Chan Decl."), attached as Exhibit A.  Contrary to Petitioner's claims, ICE complied with its statutory and regulatory authority to arrest and detain him because ICE is prepared to effectuate his removal order.  *Id.*, ¶ 18.  As such, his detention is authorized by statute, and he has no entitlement to release aside from his return to his home country of Cambodia.

Petitioner's claim that his detention violates Due Process is also without merit.  The Supreme Court set forth a framework for analyzing the Constitutionality of post-final order detention under Section 1231(a)(6) in *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001).  In *Zadvydas*, the Supreme Court explained that the "reasonableness" of continued detention under Section 1231(a)(6) should be measured "primarily in terms of the statute's basic purpose,

petition…"); *Vieira v. Moniz*, No. CV 19-12577-PBS, 2020 WL 488552, at *1 n.1 (D. Mass. Jan. 30, 2020) (evaluating the Government's response and dismissing habeas petition under Section 2254 Rules).

namely, assuring the alien's presence at the moment of removal." 533 U.S. at 700. The Court held that post-final order detention under Section 1231 is presumptively reasonable for six months. *Id.* at 701. Petitioner's Due Process challenge to his detention fails because it is premature as he has only been detained for 15 days. *See Rodriguez-Guardado v. Smith,* 271 F. Supp. 3d 331, 335 (D. Mass. 2017) ("As petitioner has been detained for approximately two months as of this date, the length of his detention does not offend due process.").

Finally, Petitioner cannot raise a colorable due process claim as to ICE's revocation of his prior Order of Supervision. ICE properly exercised its broad discretionary authority to revoke Petitioner's prior release pursuant to 8 C.F.R. § 241.13 as "there is a significant likelihood of removal in the reasonably foreseeable future.") (Chan Decl. ¶ 12).

As such, this Court should not order his release, and his Petition must be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Immigration History

The Petitioner is a native and citizen of Cambodia. (Chan Decl. ¶ 7).

The Petitioner entered the United States on or about August 3, 1992, at New York, New York as a nonimmigrant. (Chan Decl. ¶ 8).

On July 17, 1998, the Immigration and Naturalization Service served the Petitioner with a Form I-862, Notice to Appear, alleging that he was subject to removal pursuant to 8 U.S.C. 1227(a)(2)(B)(i) as well as 8 U.S.C. 1227(a)(2)(A)(iii). (Chan Decl. ¶ 9).

On March 20, 2003, an immigration judge in the Boston Immigration Court ordered the Petitioner removed from the United States. (Chan Decl. ¶ 10). The Petitioner waived his right to appeal this decision. *Id.* This was a final order of removal. *Id.*

On October 27, 2003, ICE released the Petitioner on an Order of Supervision ("OSUP").

(Chan Decl. ¶ 11).

On April 29, 2025, ICE revoked OSUP because ICE believed there was a significant likelihood of removal in the reasonably foreseeable future as they were now able to obtain travel documents from Cambodia. (Chan Decl. ¶ 12). ICE rearrested the Petitioner in order to remove him on the final order of removal. *Id.* ICE provided the Petitioner a copy of the written notice of revocation and also conducted an informal interview on April 29, 2025. (Chan Decl. ¶ 13).

On May 13, 2025, ICE requested a travel document for the Petitioner to return to Cambodia. (Chan Dec. ¶ 15). The Government of Cambodia has been issuing travel documents within approximately thirty (30) days of receipt of travel document request. (Chan Dec. ¶ 16). ICE has been removing aliens to Cambodia. (Chan Dec. ¶ 17). ICE is prepared to effectuate Petitioner's removal. (Chan Dec. ¶ 18).

### B.  Procedural History

Petitioner filed this Petition on April 29, 2025. Petitioner asserts that ICE unlawfully detained him because they did so "without new probable cause." (Petition ¶ 13). He notes that although he has a significant criminal history that he has not recidivated since 2006. (Petition ¶ 1). He alleges that his detention violates his due process and other constitutional rights. (Petition ¶ 14). Petitioner requests from that the Court release him and issue an order "prohibiting the Petitioner continuing in custody and prohibiting him from being taken from Massachusetts." (Petition page 3).

## <u>ARGUMENT</u>

ICE's detention of Petitioner is authorized by statute and regulation and does not offend the Constitution. Additionally, this Court lacks jurisdiction to interfere with ICE's effectuation of Petitioner's removal order. As such, this Court must deny the Petition.

A.  **Petitioner is Lawfully Detained Pursuant to 8 U.S.C. § 1231**

ICE's detention authority stems from 8 U.S.C. § 1231 which provides for the detention and removal of aliens with final orders of removal.   Section 1231(a)(1)(A) directs immigration authorities to remove an individual with a final order of removal within a period of 90 days—this is known as the "removal period."  During the removal period, § 1231(a)(2) requires that ICE "shall detain" the final order alien.  If, however, the removal period has expired, ICE can either release an individual pursuant to an Order of Supervision as directed by Section 1231(a)(3) or may continue detention under Section 1231(a)(6).  Per Section 1231(a)(6), ICE may continue detention beyond the removal period for three categories of individuals:

- Those who are inadmissible to the United States pursuant to 8 U.S.C. § 1182;

- Those who are subject to certain grounds of removability from the United States pursuant to 8 U.S.C. § 1227; or

- Those whom immigration authorities have determined to be a risk to the community or "unlikely to comply with the order of removal."

Because Petitioner's prior order of removal was final in 2003, Petitioner is now outside of the 90-day removal period during which the government "shall detain" the individual. 8 U.S.C. § 1231(a)(2).   However, 8 U.S.C. § 1231(a)(6) allows ICE to detain Petitioner because he is removable under 8 U.S.C. § 1227(a)(2).  As such, ICE has statutory authority to detain Petitioner to effectuate his removal order from the United States and he is not entitled to a bond hearing or release as Section 1231(a)(6) does not contemplate such process.

The Supreme Court, in *Johnson v. Arteaga-Martinez*, answered the question of "whether the text of § 1231(a)(6) requires the Government to offer detained noncitizens bond hearings after six months of detention in which the Government bears the burden of proving by clear and convincing evidence that a noncitizen poses a flight risk or a danger to the community."  596 U.S. 573, 574 (2022).  The Court answered that question definitively, holding that Section

1231(a)(6)'s plain text, which "says nothing about bond hearings before immigration judges or burdens of proof" … "directs that we answer this question in the negative." *Id.* at 581.

As such, Petitioner's claim that he is entitled to release is foreclosed by statute and Supreme Court precedent.

**B. ICE's Revocation of Release Comports with Regulation and the Constitution.**

Petitioner's claim that his arrest and detention violate the Constitution because his Order of Supervision was revoked "without new probable cause" is meritless. ICE exercised its significant discretion in revoking his release in an appropriate manner.

**1. The Post-Order Custody Regulations Provide for Revocation of Release at ICE's Discretion to Effectuate a Removal Order.**

While 8 U.S.C. § 1231(a)(3) is silent as to revocation procedures for an individual released pursuant to an Order of Supervision, 8 C.F.R. § 241.13, entitled "Determination of whether there is a significant likelihood of removing a detained alien in the reasonably foreseeable future," provides in relevant part:

**Revocation for Removal**. The <u>Service</u> may revoke an <u>alien</u>'s release under this section and return the <u>alien</u> to custody if, on account of changed circumstances, the <u>Service</u> determines that there is a significant likelihood that the <u>alien</u> may be removed in the reasonably foreseeable future. Thereafter, if the <u>alien</u> is not released from custody following the informal <u>interview</u> provided for in <u>paragraph (h)(3)</u> of this section, the provisions of § 241.4 shall govern the <u>alien</u>'s continued detention pending removal.

8 CFR 241.13(h)(4)(i)(2)

The regulatory provisions concerning revocation of release are contained at 8 C.F.R. § 241.13 and authorizes significant discretion to ICE to revoke release where there is a significant likelihood that the alien may be removed in the reasonably foreseeable future.

When ICE revokes release of an individual under 8 C.F.R. § 241.13, ICE must conduct an "informal interview" to advise the individual of the basis for revocation and must also serve

6

the individual with a written notice of revocation. *Id.* If ICE determines revocation remains appropriate after conducting the informal interview, then ICE will provide notice to the individual of a further custody review that "will ordinarily be expected to occur within approximately three months after release is revoked." 8 C.F.R. § 241.4(l)(3).

However, ICE is not required to "conduct a custody review under these procedures when [ICE] notifies the alien that it is ready to execute an order of removal." 8 C.F.R. § 241.4(g)(4); *Rodriguez-Guardado*, 271 F. Supp. 3d at 335. Further, if ICE determines in its "judgment [that] travel documents can be obtained, or such document is forthcoming, the alien will not be released unless immediate removal is not practicable or in the public interest." 8 C.F.R. § 241.4(g)(3). These regulations apply to aliens who have "filed a motion to reopen immigration proceedings for consideration of relief from removal . . . unless the motion to reopen is granted." 8 C.F.R. § 241.4(b)(1); *Rodriguez-Guardado*, 271 F. Supp. 3d at 335 ("The fact that petitioner's motion to reopen the removal proceedings remains pending does not lead to a different result" as to ICE's ability to effectuate removal pursuant to Section 1231).

**2. ICE Complied with the POCR Regulations to Arrest Petitioner.**

Here, ICE revoked Petitioner's release on April 29, 2025, pursuant to 8 C.F.R. § 241.13, because ICE now believed there was a significant likelihood of removal in the reasonably foreseeable future. (Chan Decl. ¶¶ 12-13).

In revoking release, ICE complied with the regulation that allows revocation when ICE determines that it "is appropriate to enforce a removal order … against an alien" and when ICE finds that the "purposes of release have been served." 8 C.F.R. § 241.4(l)(2). As explained by another session of this Court, when ICE "determined that revocation was necessary to initiate [] removal … [n]o further justification was required." *Doe v. Smith*, No. CV 18-11363-FDS, 2018

7

WL 4696748, at *11 (D. Mass. Oct. 1, 2018).   As Chief Judge Saylor explained in *Doe*, the regulation does not require Field Office Director "to make a formal determination that her revocation was in the public interest[,]" instead, the FOD has "discretion to determine when revocation is appropriate".   *Id.*   As stated by another court, the regulation provides a "short and straight path for immigrants whom the government is ready and able to remove."   *Alam v. Nielsen*, 312 F. Supp. 3d 574, 582 (S.D. Tex. 2018).   *See also Ferrari v. Wilcox*, No. C19-385-RSM-BAT, 2019 WL 13209736, at *5 (W.D. Wash. Sept. 24, 2019) (Explaining that because ICE had "obtained a travel document[] and scheduled his removal, ICE properly revoked [petitioner's] release …."). As such, ICE had ample justification per regulation to revoke release.

ICE also provided a written copy of the notice of revocation to Petitioner and conducted 8 C.F.R. § 241.4(l)'s required "informal interview" with Petitioner on April 29, 2025, to explain the basis for his revocation and served him with a written notice of revocation soon after his arrest.  (Chan Decl. ¶ 13).

Courts routinely conclude that compliance with the POCR regulations protect individual's Constitutional rights while detained.   *See e.g., Moses v. Lynch*, No. 15-cv-4168, 2016 WL 2636352, at *4 (D. Minn. Apr. 12, 2016) ("When immigration officials reach continued-custody decisions for aliens who have been ordered removed according to the custody-review procedures established in the Code of Federal Regulations, such aliens receive the process that is constitutionally required."); *Portillo v. Decker*, No. 21 CIV. 9506 (PAE), 2022 WL 826941, at *6 (S.D.N.Y. Mar. 18, 2022) (Collecting cases supporting conclusion that the POCR framework has routinely been deemed constitutional and noting that petitioner had not "cite[d] legal authority in support of his generalized laments about the administrative process.").

Because Petitioner does not allege that ICE violated any specific procedures under the

applicable regulation, his petition should be denied.  *See, e.g.*, *Doe*, 2018 WL 4696748, at *7 (dismissing habeas claim where "there was no regulatory violation" in connection with custody reviews); *Perez v. Berg*, No. 24-CV-3251 (PAM/SGE), 2025 WL 566884, at *7 (D. Minn. Jan. 6, 2025), *report and recommendation adopted,* No. CV 24-3251 (PAM/ECW), 2025 WL 566321 (D. Minn. Feb. 20, 2025) (Finding no due process violation "[a]bsent an indication that ICE failed to comply with its regulatory obligations in some more specific way".).

To the extent Petitioner seeks this Court to conduct its own custody review or to analyze ICE's custody determinations, as explained by another court, "[s]uch arguments are not proper here.  It is ICE's province under 8 U.S.C. 1231(a)(6) to determine whether a removable alien such as [petitioner] should be detained past the 90-day removal period" … as Congress has "eliminated judicial review of immigration-related matters for which ICE [] has discretion—such as flight-risk determinations."  *Xie Deng Chen v. Barr*, No. 1:20-CV-00007-SL, 2021 WL 2255873, at *4 (N.D. Ohio Feb. 5, 2021).  *See also Tazu v. Att'y Gen. United States*, 975 F.3d 292, 297 (3d Cir. 2020) (District court lacked jurisdiction over petitioner's "challenge to his short re-detention for removal" concerning whether his release was revoked in accordance with regulation because of 8 U.S.C. § 1252(g)); *Portillo*, 2022 WL 826941, at * 7 n. 9 (Explaining that the court lacks jurisdiction to review ICE's POCR decisions).

As such, Petitioner's claim that ICE's arrest and detention of Petitioner violated statute and regulation fails as ICE properly exercised its ample discretion in revoking Petitioner's release.

### C.  Petitioner's Statutorily Authorized Detention is Constitutional.

Petitioner's claim that his detention violates due process is similarly without merit as his detention comports with the framework set forth by the Supreme Court in *Zadvydas* through

which a due process challenge to post-final order detention must be analyzed.  Petitioner does not face indefinite detention and will be released to Cambodia in the near future as ICE has requested the necessary travel documents to return him to his home country.

As recognized by the Supreme Court, "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process."  *Demore v. Kim*, 538 U.S. 510, 523 (2003).  When evaluating "reasonableness" of detention, the touchstone is whether an alien's detention continues to serve "the statute's basic purpose, namely, assuring the alien's presence at the moment of removal."  *Zadvydas*, 533 U.S. at 699.  And here, it does.

To set forth a Constitutional violation for Section 1231 detention, an individual must satisfy the *Zadvydas* test.  *See Jimenez v. Cronen,* 317 F. Supp. 3d 626, 634 (D. Mass. 2018) (Explaining that "*Zadvydas* addressed the substantive due process component of the Fifth Amendment. The Supreme Court held, in effect, that an alien's right to substantive due process could be violated by prolonged detention even if the alien's right to procedural due process had been satisfied."); *Castaneda v. Perry*, 95 F.4th 750, 760 (4th Cir. 2024) (Explaining that "*Zadvydas*, largely, if not entirely forecloses due process challenges to § 1231 detention apart from the framework it established."); *Wang v. Ashcroft*, 320 F.3d 130, 146 (2d Cir. 2003) (The *Zadvydas* "test articulates the outer bounds of the Government's ability to detain aliens … without jeopardizing their due process rights.").

In *Zadvydas*, the Supreme Court held that the government cannot detain an alien "indefinitely" beyond the 90-day removal period.  533 U.S. at 682.  The Supreme Court "read an implicit limitation into the statute … in light of the Constitution's demands" and held that Section 1231(a)(6), "limits an alien's post-removal-period detention to a period reasonably necessary to bring about the alien's removal from the United States." *Id.* at 689.  The *Zadvydas*

Court held that post-removal detention for six months is "presumptively reasonable." *Id.* at 701. Beyond six months, the Supreme Court explained, an individual could file a habeas petition seeking release. *Id.* at 700-01. In such petition, the individual must show there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future[.]" *Id.* at 701. If the individual does so, the burden would then shift to the government to produce "evidence sufficient to rebut that showing." *Id.*

Petitioner's Due Process challenge fails under his present circumstances. Petitioner seems to argue that because ICE previously released him on an Order of Supervision, his current detention violates the Constitution. Petitioner is mistaken, however.

First, a prior release pursuant to an Order of Supervision does not provide Petitioner with a constitutional basis not to be arrested again in the future if ICE determines effectuation of his removal order is possible. As explained by another session of this Court, if "the government in granting discretionary relief to an alien foreswears its ability to later detain an alien as part of the removal mechanism, then the government would have every incentive to abstain from any favorable exercise of discretion." *Rodriguez-Guardado,* 271 F. Supp. 3d at 335. Stated similarly, a prior order of release on account of the lack of ability to remove an alien "did not amount to a permanent injunction against future detention." *Hango v. U.S. Att'y Gen.*, No. 3:05-CV-2196, 2019 WL 1301981, at *2 (W.D. La. Mar. 21, 2019).

Additionally, Petitioner's due process claim fails because any *Zadvydas* challenge cannot be raised until Petitioner has been detained for six-months in post-final order custody and he has been detained for less than one month. *See Rodriguez-Guardado,* 271 F. Supp. 3d at 335 ("As petitioner has been detained for approximately two months as of this date, the length of his detention does not offend due process."); *Julce v. Smith*, No. CV 18-10163-FDS, 2018 WL

11

1083734, at *5 (D. Mass. Feb. 27, 2018) (Habeas petition deemed "premature at best" as it was filed after three months of post-final order detention); *Farah v. U.S. Att'y Gen.,* 12 F.4th 1312, 1332–33 (11th Cir. 2021) (Explaining that "[i]f after six months he is still in custody and has not been removed from the United States, then he can challenge his detention under section 1231(a). But until then, his detention is presumptively reasonable under *Zadvydas*.).

Finally, Petitioner does not face indefinite detention. ICE has requested the necessary travel documents to effectuate Petitioner's release from custody and return to his home country as soon as possible. Petitioner's detention is fully permissible and does not violate due process, and therefore his claim for release must be rejected.

### D. This Court Lacks Jurisdiction to Interfere with Petitioner's Removal from the United States.

To the extent Petitioner seeks this Court to enter an order staying ICE's effectuation of Petitioner's removal order, this Court is without jurisdiction to offer such relief as 8 U.S.C. § 1252(g) precludes a district court from staying orders of removal. Section 1252(g) states that "no court shall have jurisdiction to hear any cause or claim by ... any alien arising from the decision or action by [ICE] to ... *execute removal orders against any alien*." (emphasis added). This provision applies "notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title." *Id.* Section 1252(g) is "directed against a particular evil: attempts to impose judicial constraints upon [certain categories of] prosecutorial discretion." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 485 n.9 (1999). Indeed, Petitioner's "requested relief, a stay from removal, would necessarily impose a judicial constraint on immigration authorities' decision to execute the removal order, contrary to the purpose of § 1252(g)." *Viana v. President of United States*, No. 18-CV-222-LM, 2018 WL 1587474, at *2 (D.N.H. Apr. 2, 2018), *aff'd sub nom. Viana v. Trump*, No.

18-1276, 2018 WL 11450369 (1st Cir. June 18, 2018).

Courts within this district, and around the country, routinely hold that they lack jurisdiction to enter an order staying removal based on section 1252(g)'s plain language. *See e.g., Tejada v. Cabral,* 424 F. Supp. 2d 296, 298 (D. Mass. 2006) ("Congress made it quite clear that all court orders regarding alien removal—be they stays or permanent injunctions—were to be issued by the appropriate courts of appeals."); *Aziz v. Chadbourne*, No. CIV.A.07-11806-GAO, 2007 WL 3024010, at *1 (D. Mass. Oct. 15, 2007) ("[a]ny stay of the final order of removal would squarely interfere with the execution of the removal order."); *Martin v. U.S. Immigration & Customs Enf''t,* No. CIV.A. 13-11329-DJC, 2013 WL 3282862, at *3 (D. Mass. June 26, 2013) ("this Court lacks authority to issue a stay of a final order of removal."); *Nelson v. Hodgson*, No. CIV.A. 14-10234-DJC, 2014 WL 2207621, at *2 (D. Mass. May 27, 2014) (the "provisions of the REAL ID Act preclude this court from entering an order staying petitioner's removal."); *Doe,* 2018 WL 4696748, at *3 (same); *Compere*, 368 F. Supp. 3d 164, 170 (D. Mass. 2019) (same); *Lopez Lopez v. Charles*, No. 12-CV-101445-DJC, 2020 WL 419598, at *4 (D. Mass. Jan. 26, 2020) (same).

13

## CONCLUSION

For the above reasons, Petitioner's assertion of unlawful detention in violation of statute,

regulation, and the Constitution fails. As such, this Court should deny his request for release.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

Dated: May 13, 2025                    By:    */s/ Shawna Yen*
                                               Shawna Yen
                                               Assistant U.S. Attorney
                                               U.S. Attorney's Office
                                               John J. Moakley U.S. Courthouse
                                               1 Courthouse Way, Suite 9200
                                               Boston, MA  02210
                                               Tel.: 617-748-3100
                                               Email: Shawna.Yen@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated:  May 13, 2025                    By:    */s/ Shawna Yen*
                                               SHAWNA YEN
                                               Assistant United States Attorney